IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FOLAMI BROWN,

    Plaintiff,

v.                                              Civil Action No.:

BROOKDALE SENIOR LIVING
COMMUNITIES, INC.,

    Defendant.

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* District Court jurisdiction exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. § 1331, and pursuant to the Code of Alabama § 25-5-11.1. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by FLSA, and Code of Alabama § 25-5-11.1.

### II. PARTIES

2. Plaintiff, Folami Brown (hereinafter "Plaintiff"), is a resident of Birmingham, Jefferson County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this

1

case. Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1). Plaintiff was an employee within the contemplation of Code of Alabama § 25-5-11.1. Thus pursuant to 28 U.S.C.§ 1391(b), venue for this action lies in the Northern District, Southern Division.

3.   Defendant, Brookdale Senior Living Communities, Inc. (hereinafter Defendant), is a company registered and doing business in the State of Alabama. Therefore, this Court has personal jurisdiction over Defendant. Defendant is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

### III. STATEMENT OF FACTS

4.   Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5.   On February 15, 2013, Plaintiff began work with Defendant as an LPN Charge Nurse.

6.   Plaintiff's job duties were general nursing duties, medical passes, admission/discharge, assessments, Medicare charting, dispensing of medications, etc.

7.   At all times during the employment relationship, Defendant classified Plaintiff as an exempt, hourly paid employee.

8.   Plaintiff typically worked in excess of forty hours in a work week.

2

9. Plaintiff's shift assignments were to work Saturdays and Sundays from 7:00 a.m. to 7:00 p.m. and on Tuesdays and Wednesdays from 3:00 p.m. to 11:00 p.m.

IV.   COUNT ONE – FLSA – Overtime Violations

10. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-9 above.

11. Plaintiff typically arrived 15-30 minutes before the beginning of her shift.

12. Plaintiff would often perform work for the benefit of Defendant prior to clocking in providing care to patients and other duties.

13. After clocking in, but before the beginning of her shift, Plaintiff would get the census; make out shift assignments; and, talk to the nurse she was replacing.

14. Defendant required Plaintiff to clock in and out for lunch.

15. On an occasional basis, Plaintiff was interrupted during her unpaid meal break while off-the-clock in order to deal with patient emergencies; talking with family members; talking with doctors; handling pharmaceutical medical deliveries, etc.

16. On some of these interruptions, Plaintiff would clock back in, and on others interruptions she did not clock back in because of the nature of the interruption.

17. Defendant did not pay Plaintiff for all of the time she spent caring for the needs of patients and otherwise handling her job duties that occurred off-the-clock during her unpaid meal break.

18. On an occasional basis, Plaintiff would turn in a time correction form to be paid for working through all or part of her unpaid meal break; but upon information and belief, she was not paid for all of those times that she turned in.

19. Defendant rounds the time of hourly paid employees to the nearest quarter hour.

20. Plaintiff alleges that Defendant did not properly round her time to insure that she was fully compensated for all time worked in excess of forty hours in a work week during each and every work week during the time that she worked for Defendant in violation of the FLSA.

21. As a result of Defendant's willful and intentional violations of the FLSA, Plaintiff has been damaged, suffering loss of overtime pay.

## V.   COUNT TWO – Code of Alabama 25-5-11.1 – Retaliatory Discharge

22. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-21 above.

23. In January 2014, Plaintiff suffered a work related injury.

24. Plaintiff reported the work related injury to Defendant's management.

25. Defendant's Workmen's Compensation doctor returned Plaintiff to work under a "light duty" restrictionws.

26. Defendant's Director of Nursing, Jackie Smith, who was also Plaintiff's supervisor, assigned Plaintiff jobs that did not conform with the doctor's restrictions, and were meant to be embarrassing and demeaning to Plaintiff.

27. Among Plaintiff's temporary light duty job assignments as a licensed nurse, Smith required Plaintiff to wash dishes in the kitchen; scrub trash cans in the hallway in front of other nurses; dust blinds at resident's rooms and other areas of the facility; clean fire extinguishers; clean mailboxes, etc.

28. Plaintiff complained to Defendant's HR corporate employee, Ryan Allspaugh, about the demeaning assignments to no avail; these assignments continued until Plaintiff was fully released by the doctor to resume her job duties in March 2014.

29. On June 25, 2014, Smith terminated Plaintiff's employment for a false and fabricated reason.

30. On June 18, 2014, Plaintiff worked from 3:00 p.m. to 11:00 p.m. in the West Wing of the facility.

31. When Plaintiff arrived at work at 3:00 p.m. that day, she immediately went to get the census in order to fill out the schedules. In her absence, Assistant

Director of Nursing, Charletta Steele, counted the medications' cart in the West Wing with Taneshia Nelson, and Plaintiff's trainee, Rachel Ajai, LPN.

32. When Plaintiff returned with the census data, Ms. Steele told Plaintiff she did not need to count the cart, as Ms. Steele had already done so with Ms. Nelson and Ms. Agai.

33. On June 18, 2014, Plaintiff completed her shift without incident.

34. On June 18, 2014, April Morris came into work with Plaintiff at the 3:00 p.m. shift.

35. Morris counted the medical cart in the East Wing at 3:00 p.m. with Evelyn Williams.

36. Morris counted the split shift cart with (FNU) Hollis at 5:00 p.m. and held the key until Katrina Shaw came in at 7:00 p.m.

37. Shaw reported to work at 7:00 p.m., but did not count the split shift cart with Morris.

38. Shaw counted the split shift cart with Teresa Myers (works 11:00 p.m. to 7:00 a.m.) at 3:00 a.m. and found several missing narcotics.

39. At no time during Plaintiff's shift did she have access to the split shift cart, as was verified by Morris to Smith.

40. Smith drug tested all employees on the shift.

41. The drug test results showed negative readings for the missing drugs.

6

42. Steele told Smith that the appropriate punishment for Morris and Shaw would be write-ups, and for no discipline at all to Plaintiff, as she had done nothing wrong.

43. Smith ignored Steele's advice and terminated Plaintiff despite the fact that Plaintiff had done absolutely nothing wrong.

44. After terminating Plaintiff's employment, Smith falsely reported to the Nursing Board of the State of Alabama that Plaintiff had failed to count her cart when she began her shift on June 18, 2014, without mentioning to the Board that Steele, Plaintiff's superior, counted the cart for Plaintiff and told Plaintiff that she did not have to do so on that date.

45. Smith falsely reported to the Board of Nursing that Plaintiff had reported to work at 7:00 p.m. on June 18, 2014, not the 3:00 p.m. time that Plaintiff actually reported.

46. Defendant, through its agent, Smith, retaliated against Plaintiff for seeking Worker's Compensation benefits provided to Plaintiff, pursuant to COA, Ala. § 25-5-11, *et seq.* in violation of COA, Ala. § 25-5-11.1.

47. As a result of Defendant's violation of COA, Ala. 25-5-11.1, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish, and other compensatory damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

B. This Court award Plaintiff the amount of her unpaid wages, plus an additional equal amount as liquidated damages; back pay; front pay; nominal damages; special damages; and punitive damages;

C. That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

D. For such other and further relief as this Court deems equitable, proper and just.

_____
David R. Arendall

_____
Allen D. Arnold

OF COUNSEL:
ARENDALL & ARNOLD
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 – Office
205.252.1556 – Facsimile

8

PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY.

_____
Of Counsel

**SERVE DEFENDANT AT:**
Brookdale Senior Living Communities, Inc.
c/o Agent for Service of Process
C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104